**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

---

**No. 04-1971**

---

MID-ATLANTIC REGIONAL COUNCIL OF CARPENTERS,
UNITED BROTHERHOOD OF CARPENTERS AND JOINERS
OF AMERICA,

                                        Petitioner,

        versus

NATIONAL LABOR RELATIONS BOARD,

                                        Respondent,

HIGH POINT CONSTRUCTION GROUP, LLC,

                                        Intervenor.

---

**No. 04-2113**

---

NATIONAL LABOR RELATIONS BOARD,

                                        Petitioner,

        versus

HIGH POINT CONSTRUCTION GROUP, LLC,

                                        Respondent.

---

On Petition for Review and Cross-application for Enforcement of an
Order of the National Labor Relations Board.  (6-CA-32853-1)

---

Argued: March 17, 2005            Decided: May 27, 2005

---

Before WILLIAMS, MOTZ, and SHEDD, Circuit Judges.

---

Petition for review denied, and cross-application for enforcement granted by unpublished opinion. Judge Shedd wrote the opinion, in which Judge Williams and Judge Motz joined.

---

**ARGUED:** Charles F. Donnelly, DONNELLY & CARBONE, P.L.L.C., Charleston, West Virginia, for Mid-Atlantic Regional Council of Carpenters, United Brotherhood of Carpenters and Joiners of America. Fred B. Jacob, Supervisory Attorney, NATIONAL LABOR RELATIONS BOARD, Appellate Court Branch, Office of the General Counsel, Washington, D.C., for the Board. Frederick Fairfax Holroyd, II, HOLROYD & YOST, Charleston, West Virginia, for High Point Construction Group, L.L.C. **ON BRIEF:** Arthur F. Rosenfeld, General Counsel, John E. Higgins, Jr., Deputy General Counsel, John H. Ferguson, Associate General Counsel, Aileen A. Armstrong, Deputy Associate General Counsel, Kira Dellinger Vol, NATIONAL LABOR RELATIONS BOARD, Washington, D.C., for the Board.

---

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

SHEDD, Circuit Judge:

The Mid-Atlantic Regional Council of Carpenters, United Brotherhood of Carpenters and Joiners of America (the "Union") petitions for review of an order issued by the National Labor Relations Board (the "Board"). The Union seeks to modify the Board's order so that the employer, High Point Construction Group, LLC ("High Point"), is required to bargain with the Union. The Board cross-applies, seeking enforcement of its order finding that High Point violated § 8(a)(1), 29 U.S.C. § 158(a)(1), of the National Labor Relations Act (the "Act"), but not imposing a bargaining order pursuant to NLRB v. Gissel Packing Co., 395 U.S. 575 (1969). Because the Board did not abuse its discretion in fashioning a remedy, we grant enforcement of the Board's order and deny the Union's petition for review.[*]

I.

High Point is a limited liability company owned and operated by Tim Shaw, Tim Critchfield, and Chris Critchfield, all of whom are member-managers. Certain High Point employees, dissatisfied with how they were being treated by their employer, met with a director of the Union about securing its representation. These employees solicited the support of their fellow employees, and

---

[*]To the extent that High Point argues that the Board's order should not be enforced because the company has "fully complied" with the order, we find this argument unpersuasive.

3

sometime thereafter a majority of the employees at High Point signed authorization cards requesting Union representation. The Union sent a request for recognition to High Point via facsimile and mail, but the company did not respond. Ultimately, a Union official spoke with Chris Critchfield, who acknowledged receipt of the Union's request, but declined recognition. The Union filed a petition for representation with the Board's regional office later that day.

The Union called a meeting at the home of employee Randall Burke, and several employees gathered there. Shaw arrived at the meeting accompanied by his brothers Tom and Terry, as well as two friends Bill Clevenger and Chris Chapman. Each of the men was described as large, and Tom was drinking beer. Shaw asked the employees why he had not been invited to the meeting, and the employees did not answer. Burke's wife told the men that no drinking was allowed on her property and asked that they put away the beer or leave. When Tom ignored her, she repeated her demand. Tom, becoming irate, began to yell profanities at the employees regarding their relationship with the Union. The five men then drove away.

The Union representative at the meeting, having been advised that Shaw sometimes carried a gun, called the state police. State Trooper John Smith responded to the call. While Trooper Smith was completing an incident report, one of the employees at the meeting

4

spotted Shaw's truck pass by Burke's house. Trooper Smith immediately pursued the truck and stopped it approximately one mile from Burke's house. When Trooper Smith questioned the truck's occupants, Shaw responded with a profane tirade about how the Union was trying to destroy his company.

In addition to surveilling and intimidating employees at the meeting, the management of High Point threatened employees that it would close down the plant and file for bankruptcy. Also, on certain occasions, Shaw interrogated one employee about his involvement with the Union. Further, while at a job site, Tim Critchfield threatened High Point employees with a lack of upcoming work if they chose the Union to represent them.

After a hearing before an Administrative Law Judge (ALJ), the ALJ found that High Point committed several labor violations. Among the remedies that the ALJ recommended was a Gissel order, mandating that High Point bargain with the Union even though the Union had not yet prevailed in an election by employees. See Gissel, 395 U.S. at 614-615. On review, although the Board upheld most of the ALJ's findings relating to liability, it fashioned a less severe remedy. Rather than require High Point to bargain with the Union, the Board enjoined High Point not only from recommitting the specific violations found, but also from violating the Act "in any other manner." J.A. 139. Further, the Board required a High

5

Point manager to read aloud the Board's notice to employees at its facility. J.A. 139.

## II.

In its petition for review of the Board's order, the Union argues solely that the Board erred in refusing to issue a Gissel bargaining order. Id. We review the Board's choice of remedy for an abuse of discretion. NLRB v. Williams Enters., Inc., 50 F.3d 1280, 1289 (4th Cir. 1995). The Board has broad discretion to choose a remedy, and we "must enforce its choice unless it can be shown that the order is a patent attempt to achieve ends other than those which can fairly be said to effectuate the policies of the [NLRA]." Id. (internal quotations omitted). Because the Union has made no showing that the Board's remedy was arbitrary, capricious, or manifestly contrary to the statute, we cannot say that the Board abused its discretion. See Coronet Foods, Inc. v. NLRB, 158 F.3d 782, 788 (4th Cir. 1998).

The preferred method for employees to select a bargaining representative is through secret-ballot elections. Gissel, 395 U.S. at 602; see also Overnite Transp. Co. v. NLRB, 280 F.3d 417, 435-36 (4th Cir. 2002) (en banc) (stating that "it is the strong preference of our national labor policy not to impose collective bargaining representatives on employees except when they have . . . elected to be so represented"). However, where the "coercive

effects" of unfair labor practices would prevent a "fair and reliable election," Gissel, 395 U.S. at 614, the court may impose forced bargaining pursuant to Gissel without such an election. Overnite, 280 F.3d at 436. Because "the extraordinary and drastic remedy of forced bargaining pursuant to [Gissel] is reserved for only the most unusual cases[,] Gissel orders are available only when traditional remedies are insufficient to make possible a fair and reliable election." Id. (internal quotations and citations omitted). Further, we require specific, detailed findings to impose such orders. Id.

The Board found that "under the circumstances presented here . . . the imposition of special remedies should serve to cleanse the atmosphere of the effects of [High Point's] unlawful conduct, and that a bargaining order is therefore unnecessary." J.A. 139. Although it determined that a Gissel order was not warranted, the Board issued a broad cease-and-desist order and required a management official to "read aloud to employees the notice" that would have otherwise merely been posted. J.A. 139. Having a manager read aloud the notice, the Board reasoned, is "an effective but moderate way to let in a warming wind of information, and more important, reassurance." J.A. 139 (internal quotations omitted). Further, the cease-and-desist order prohibited High Point not only from repeating its past violations as in customary orders, but also from violating the Act in "any other manner." J.A. 139.

7

The Board's decision that "special remedies," J.A. 139, less severe than a <u>Gissel</u> order could facilitate a "fair and reliable election," <u>see</u> <u>Gissel</u>, 395 U.S. at 614, is not arbitrary, capricious, or manifestly contrary to the statute. The Board determined that an intermediate remedy was appropriate and fashioned such a remedy accordingly. Because of the extraordinary nature of <u>Gissel</u> orders, the Board acted within its discretion in upholding the strong preference for secret-ballot elections over forced bargaining.

## III.

The Board did not abuse its discretion in refusing to issue a <u>Gissel</u> bargaining order. Accordingly, we deny the Union's petition for review and grant enforcement of the Board's order.

<u>PETITION FOR REVIEW DENIED, AND
CROSS-APPLICATION FOR ENFORCEMENT GRANTED</u>

8